IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

FREDERICK M. LITTON                          PLAINTIFF

v.

WELLMONT HEALTH SYSTEM,
d/b/a HOLSTON VALLEY MEDICAL CENTER
d/b/a BRISTOL REGIONAL MEDICAL CENTER

MOUNTAIN STATES HEALTH ALLIANCE
d/b/a WOODRIDGE HOSPITAL

NORTHEAST TENNESSEE EMERGENCY PHYSICIANS

DR. GREGORY MARCUM

DR. KELLY CHUMBLEY

DR. JAMES GLASS

DR. TERRY C. BOREL

DR. CHRISTOPHER CRONE

DR. ADRIAN C. BUCKNER

FRONTIER HEALTH
d/b/a BRISTOL REGIONAL COUNSELING CENTER        DEFENDANTS

## COMPLAINT

       COMES NOW, Frederick M. Litton, by Counsel, and hereby moves this Honorable Court for judgment against the Defendants in the sum of an amount in excess of $75,000, exclusive of costs and interests, as his compensatory and legal damages, with pre judgment interest beginning from May 24, 2010.

       In support of this Complaint, Counsel avers the following:

1

## PARTIES

1. Frederick M. Litton [hereinafter "Litton"] is a resident and citizen of Wise County, Virginia and is Board Certified Medical Family Practice Medical Physician licensed in both Tennessee and Virginia.

2. Wellmont Health System ["Wellmont"] is a corporation authorized to do business within the State of Tennessee, and upon information and belief is incorporated under the laws of the State of Tennessee, and does business as Holston Valley Medical Center ["HVMC"] and Bristol Regional Medical Center ["BRMC"].

3. At all times relevant to this proceeding, Wellmont employed physicians, registered nurses, certified nursing assistants, licensed practical nurses and others to provide health care for patients who were being treated at their facilities, and employed persons to provide security at their facilities.

4. Mountain States Health Alliance ["Mountain States"] is a corporation authorized to do business within the State of Tennessee, and upon information and belief Mountain States is incorporated under the laws of the State of Tennessee, and does business as Woodridge Hospital.

5. At all times relevant to this proceeding, Mountain States employed physicians, registered nurses, certified nursing assistants, licensed practical nurses and others to provide health care for patients who were being treated at their facilities, and employed persons to provide security at their facilities.

6. Northeast Tennessee Emergency Physicians is a corporation authorized to do business within the State of Tennessee, and upon information and belief Northeast Tennessee Emergency Physicians is incorporated under the laws of the State of Tennessee.

7. At all times relevant to this proceeding, Northeast Tennessee Emergency Physicians employed physicians to provide health care for patients who were being treated at health care facilities, including Mountain States and Wellmont.

8. Dr. Gregory Marcum is physician and upon information and belief is a citizen of Tennessee.

9. At all times relevant to this proceeding, Dr. Gregory Marcum was acting as an agent and employee of Northeast Tennessee Emergency Physicians and Wellmont.

10. Dr. Kelly Chumbley is physician and upon information and belief is a citizen of Tennessee.

11. At all times relevant to this proceeding, Dr. Kelly Chumbley was acting as an agent and employee of Northeast Tennessee Emergency Physicians and Wellmont.

12. Dr. James Glass is physician and upon information and belief is a citizen of Tennessee.

13. At all times relevant to this proceeding, Dr. James Glass was acting as an agent and employee of Northeast Tennessee Emergency Physicians and Wellmont.

14. Dr. Terry C. Borel is physician and upon information and belief is a citizen of Tennessee.

15. At all times relevant to this proceeding, Dr. Terry C. Borel was acting as an agent and employee of Mountain States.

16. Dr. Christopher Crone is physician and upon information and belief is a citizen of Tennessee.

17. At all times relevant to this proceeding, Dr. Crone was acting as an agent and employee of Northeast Tennessee Emergency Physicians and Wellmont.

18. Dr. Adrian C. Buckner is physician and upon information and belief is a citizen of Tennessee.

19. At all times relevant to this proceeding, Dr. Adrian C. Buckner was acting as an agent and employee of Northeast Tennessee Emergency Physicians and Wellmont.

20. Frontier Health is a corporation authorized to do business within the State of Tennessee, and upon information and belief Frontier Health is incorporated under the laws of the State of Tennessee, and does business as Bristol Regional Counseling Center.

21. At all times relevant to this proceeding, Frontier Health employed physicians, registered nurses, certified nursing assistants, licensed practical nurses and others to provide health care for patients who were being treated at the facilities such as HVMC.

## JURISDICTION AND VENUE

22. This Court has jurisdiction based upon diversity of citizenship pursuant to 28 USC 1332.

23. Venue is appropriate in this Court pursuant 28 USC 1391 in as much as the acts complained of herein occurred within the Eastern District of Tennessee.

## FACTS

24. On May 5, 2010, Litton underwent open heart surgery at BRMC.

25. On May 9, 2010, Litton was discharged and released to his wife, Chermain Litton.

26. Chermain Litton is a nurse and was employed with Wellmont at HVMC in May 2010.

27. Litton knew where his wife was employed.

28. Approximately one week post operatively, Litton's behavior became markedly different as compared to his behavior prior to the surgery. He became easily agitated and combative. This initial behavior change is the result of a cerebral vascular accident ["CVA"] that probably began on or about this time period.

29. The CVA became progressively worse and more damaging to Litton as the result of the Defendants failure to properly diagnose his condition.

30. On May 17, 2010, Litton was admitted to the BRMC by Dr. Crone.

31. Litton remained hospitalized at BRMC for two days and was discharged on May 19, 2011.

32. While hospitalized at BRMC, Dr. Buckner was Litton's treating physician.

33. On May 25, 2010, at approximately 2:00 a.m. Chermain Litton received a telephone call from a police officer indicating that Litton was standing on the street in downtown Bristol, Tennessee looking for HVMC and that he appeared to be having trouble walking and his right leg appeared to be very swollen. The officer provided Litton with directions to the hospital and allowed him to get into his car and leave.

34. At approximately 4:00 a.m. on May 25, 2011, Litton arrived at HVMC and was admitted to the acute care section as a patient under the care of Dr. Kelly Chumley. Dr. Chumley ordered lab work and an ultrasound of the veins in Mr. Litton's right leg. The results of the ultrasound showed no indications of blood clots within Litton's right leg.

35. At approximately 7:00 a.m. on May 25, 2010, Litton began to claim he was Jesus and that he could see the demons within his wife. Several nurses employed by Wellmont witnessed this behavior and Dr. Chumley indicated that Litton had suffered a mental breakdown.

36. Dr. Chumley ordered a psychological evaluation from Frontier Health. At 12:00 p.m. Dr. Chumley's shift ended and he left the hospital.

37. Dr. Gregory Marcum then came on duty and continued the care of Litton while at HVMC.

38. On May 25, 2010, at approximately 12:00 p.m., a representative from Frontier Health evaluated Mr. Litton.

39. Frontier Health diagnosed Litton as suffering from psychosis and should be transferred to a psychiatric facility.

40. None of the persons who had responsibility to treat and care for Litton ordered an MRI or CT Scan, or requested to know what medication was prescribed to Litton.

41. Litton was moved from the HVMC emergency room acute care section to the fast track section under the care of Dr. James Glass. Litton was the only patient in the fast track section of the hospital.

42. At approximately 3:00 p.m. on May 25, 2010, Litton began to stutter excessively and his head was shaking up and down. Litton stood up from his bed, picked up his pillow and threw it down several times. The security guard employed by Wellmont witnessed this behavior and said "I don't have time to fool with this" and called the Kingsport Police Department (KPD).

43. Litton was handcuffed from behind by employees of Wellmont and ordered to walk down the hallway and escorted by the security guard employed by Wellmont. Litton told the security guard that he was unable to walk that far and the security guard physically pushed Litton from behind and continued Litton down the hallway.

44. Litton was never medically discharged from HVMC.

45. When Litton and the security guard arrived outside the hospital, the security guard told Litton to sit down and as Litton attempted to sit on a small seat, the seat tilted and Litton fell to the ground. The security guard grabbed Litton by the arm and ordered him to sit down as he pushed him to the seat.

46. KPD arrived at the HVMC after Litton had been forcefully removed from the facility. Upon arrival by officers from the KPD, employees of Wellmont advised that Litton was being discharged and that KPD needed to address his behavior.

47. KPD officers advised employees of Wellmont that Litton's behavior appeared to be a medical condition but Wellmont employees refused to continue to treat Litton.

48. Ms. Litton began to explain to KPD officers that Litton recently underwent open heart surgery and something had occurred after the surgery that was causing his problems. KPD advised Ms. Litton that a complaint had been made and that Mr. Litton would be arrested. At approximately 4:00 p.m. Mr. Litton was arrested and charged with disturbing the peace by KPD

49. On May 25, 2010 at approximately 11:00 p.m. KPD arranged for Litton to be transported to Blountville, Tennessee Jail where a jail nurse was located. Upon arrival at the Blountville Jail, Litton was combative and was screaming. Litton was peppered sprayed by an officer.

50. On May 26, 2010, Litton was taken from Blountville jail to the Sullivan County Courthouse for his arraignment. Judge Toohey released Litton to Bristol Regional Medical Center until further evaluation of Litton's medical condition was completed.

51. On May 26, 2010 at approximately 12:00 p.m., BRMC arranged transport and released Litton to Woodridge Hospital in Johnson City, Tennessee.

52. Upon admission at Woodridge Hospital, Litton was evaluated and sedated. Over a period of approximately three weeks, various psychotropic drugs were given to Litton with no favorable outcome. Litton continued to be combative and confused and demanded to be released from the hospital.

53. Dr. Borel was Litton's treating physician while Litton was hospitalized at Woodridge Hospital.

54. In June 2010, Litton was required to appear in Washington County Court in Jonesborough, Tennessee to determine his mental capacity to continue his admission in Woodridge Hospital.

55. On June 22, 2010, Litton was discharged from Woodridge Hospital to Vanderbilt University Hospital. Upon admission at Vanderbilt, a MRI was immediately ordered and Litton was diagnosed with having suffered a CVA in the right frontal lobe. Physicians at Vanderbilt opined that Litton's prior psychotic behavior were all signs that Litton was suffering from a CVA.

56. Upon being properly treated and diagnosed at Vanderbilt, Litton was released from Vanderbilt Hospital.

57. Each Defendant failed to properly diagnose Litton's condition as being the result of a CVA.

58. A reasonably prudent physician exercising reasonable care should have diagnosed Litton's condition.

59. Each of the Defendants owed a duty to provide reasonable medical care to Litton and to act in accordance with the recognized standard of acceptable professional practice in his/her/its profession and the specialty that the defendant practices in the community or in a similar community.

60. Each of the Defendants violated that duty to provide reasonable medical care to Litton.

61. Each of the Defendants, either individually or through their agents and servants, should have discovered through reasonable diligence that Litton was suffering from a CVA.

62. Each of the Defendants acted negligently in providing medical care to Litton.

63. Wellmont acted negligently by removing Litton from their facility on May 25, 2010, which resulted in Litton's arrest and incarceration.

64. Wellmont violated the standard of care by allowing a non physician to discharge Litton from its facility.

65. Wellmont violated the standard of care by allowing a non physician to determine that it was medically necessary to restrain Litton.

66. As a proximate cause of the violations of the standards of care and the acts of negligence of the Defendants, Litton has sustained legal damages.

67. Litton's legal damages exceed $75,000, exclusive of interest and costs.

68. Prior to the filing of this Complaint, Litton has complied with TCA 29-26-121.

# JURY TRIAL DEMAND

Pursuant to the FRCP 38, the Plaintiff demands a jury trial.

WHEREFORE, Plaintiff, Fredrick M. Litton, by Counsel, moves this Court for judgment against each of the Defendants, plus costs and pre-judgment interest from May 24, 2010.

Respectfully submitted,

FREDERICK M. LITTON
BY COUNSEL

**s/ Timothy W. McAfee**
Tennessee State Bar Number: 020590
Attorney for Plaintiff
Timothy W. McAfee, P.L.L.C
P.O. Box 529
1033 Virginia Avenue, NW
Norton, VA 24273
Telephone: (276) 679-5401
Fax: (276) 679-5403
[E-mail: tmcafee@mcafeelaw.com]